<u>NOT FOR PUBLICATION</u>

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
:
EVERARDO ANTONIO MUNOZ,                  :
                                         :
        Petitioner,                      :
                                         :
            v.                           :          Civil Action No. 08-6099 (JAG)
                                         :
UNITED STATES of AMERICA,                :                **OPINION**
                                         :
        Respondent.                      :
_____:

**<u>GREENAWAY, JR., U.S.C.J.</u>**[*]

Petitioner Everardo Antonio Munoz ("Petitioner"), appearing pro se, seeks to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255 ("§ 2255").  In his original motion, Petitioner asserts four grounds: (1) Petitioner's defense counsel was constitutionally ineffective; (2) Petitioner's guilty plea was unknowing and involuntary; (3) Petitioner's guilty plea was invalid; (4) Petitioner's sentence violates <u>United States v. Booker</u>, 543 U.S. 220 (2005).  In addition, Petitioner seeks to supplement his petition with a fifth claim– that his sentence was "enhanced in violation of due process" based upon the recent Supreme Court decision in <u>United States v. Santos</u>, 128 S. Ct. 2020 (2008).[1]  For the reasons set forth below, Petitioner's motion

---

[*] Sitting by designation on the District Court.

[1] Petitioner argues that this Court should construe the term "proceeds" in 18 U.S.C. § 1956 to mean "profits," not "receipts," as the Supreme Court did in <u>United States v. Santos</u>. Construing broadly Petitioner's argument, as this Court must when addressing claims of pro se litigants, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42

1

will be denied.

## **FACTUAL BACKGROUND**

On May 24, 2007, Immigration and Customs Enforcement ("ICE") agents discovered Petitioner and his wife (as well as codefendant) leaving their apartment in Weehawken, New Jersey with a large duffel bag containing cash.  (Presentence Investigation Report ¶ 10 [hereinafter "PSIR"].)  A legally conducted search of their apartment revealed two other duffel bags also containing cash.  (PSIR ¶ 11.)  Petitioner stated to the ICE agents that he did not know where the money was from, but admitted that he believed it was not legal and was possibly from drugs.  (Id. ¶ 21.)  Petitioner knew that the purpose of the deliveries of currency was to conceal and disguise the nature, location, source, ownership, and control of the funds, and admitted to performing those acts both knowingly and willfully.  (Tr. of Plea Proceedings 21:11-22:19 [hereinafter "Plea Tr."].)

## **PROCEDURAL HISTORY**

On May 24, 2007, Petitioner and his wife were arrested in New Jersey and charged with violating 18 U.S.C. § 1956(h).  (PSIR ¶ 10.)  On February 28, 2008, the grand jury returned a one-count indictment against Petitioner and his wife.  (Id. ¶ 1.)  The indictment charged that they conspired to launder narcotics proceeds, the amount of which totaled over $775,000.  (Id. ¶ 2.)  On March 20, 2008, both Petitioner and his wife entered a plea of guilty.  (See generally Plea Tr.)  Because Petitioner agreed with the Government that the amount of funds laundered was more than $400,000 but not more than $1,000,000, Petitioner had a base offense level of 22.  This Court then imposed a two-point upward adjustment because Petitioner was convicted under 18

_____

(3d Cir. 1992), this Court will allow Petitioner to supplement his petition to assert this claim.

U.S.C. § 1956, a six-point upward adjustment for knowing the funds were the proceeds of drug sales, and a three-point downward adjustment for acceptance of responsibility. (See Tr. of Sentencing Proceedings [hereinafter "Sent. Tr."].) The final calculation amounted a total offense level of 27. (Id. at 6:21-6:22.) These adjustments resulted in a guideline range of 70 to 87 months when taking into account Petitioner's criminal history category of one. (Id. at 6:21-6:24.) On June 30, 2008, this Court sentenced Petitioner to a term of imprisonment of 70 months (the bottom of the guideline range). (Id. at 10:2-10:5.) Petitioner was notified that he had a right to appeal, but he elected not to do so.

On December 12, 2008, Petitioner filed this § 2255 motion seeking to vacate, set aside, or correct his sentence, arguing that his counsel's assistance was ineffective, his guilty plea was unknowing and involuntary, his guilty plea was invalid, and that his sentence violated United States v. Booker. On March 6, 2009, Petitioner filed a motion for leave to supplement the § 2255 motion ("Supplement"), alleging as an additional basis for his motion that his sentence was enhanced in violation of due process based upon United States v. Santos, 128 S. Ct. 2020 (2008). The Government ("Respondent") answered the petition.

## LEGAL STANDARD

### I.     28 U.S.C. § 2255

In pertinent part, 28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

28 U.S.C. § 2255(a).  "[A] motion to vacate [a] sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court."  United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).  Unless it appears conclusively from the motion, files, and records that the petitioner is not entitled to relief, the district court must grant the petitioner an evidentiary hearing on the matter.  Id.

## II.  **Collateral Review**

Habeas corpus does not encompass all sentencing errors because it is not a substitute for direct appeal.  See Reed v. Farley, 512 U.S. 339, 354 (1994); United States v. Addonizio, 442 U.S. 178, 184 (1979).  Errors that justify reversal on direct appeal may not necessarily be sufficient to support collateral relief.  See id.

Where a prisoner fails to "raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"  Reed, 512 U.S. at 354.  "To show cause, a petitioner must establish that 'some external impediment' prevented him from raising the claim," such as interference by officials, the unavailability of evidence at the time, or the ineffective assistance of counsel.  See Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "Prejudice exists where 'errors at trial . . . worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Wise, 958 F.2d at 34 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

Alternatively, where a prisoner has raised, but lost, his claim on direct review, collateral relief is available under § 2255 when the claimed error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  Addonizio, 442 U.S. at 185.  As

4

such, the error must be fundamental and present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Davis v. United States, 417 U.S. 333, 346 (1974).

## DISCUSSION

Petitioner asserts that his sentence should be vacated for five reasons.  First, Petitioner asserts ineffective assistance of counsel.  Second, Petitioner argues his guilty plea was unknowing and involuntary.  Third, Petitioner contends that his guilty plea was invalid.  Fourth, Petitioner claims that his sentence violates United States v. Booker.  Finally, Petitioner argues his sentence was enhanced in violation of due process based upon United States v. Santos.

For the reasons set forth below, Petitioner's motion will be denied.  This Court will separately address each of the grounds upon which Petitioner seeks to vacate his sentence.

### I.    Petitioner's Ineffective Assistance of Counsel Claim

Petitioner asserts that his defense counsel was ineffective due to his failure to object to the six level enhancement on Petitioner's sentence imposed by this Court.  (Memo. of Law in Support of Pet'r's Mot. Pursuant to 28 U.S.C. § 2255 at 1 [hereinafter "Mem."].)

To establish a claim of ineffective assistance of counsel, a defendant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Judicial scrutiny of counsel's performance must be highly deferential.  Id. at 689.  In determining whether assistance of counsel has been ineffective, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.  If a

5

defendant fails to satisfy one prong of the <u>Strickland</u> test, a court need not consider the other.  <u>Id.</u> at 697.  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id.</u>  In <u>United States v. Shedrick</u>, the Third Circuit, citing <u>Strickland</u>, affirmed the standard for prejudice, stating "there [must be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>United States v. Shedrick</u>, 493 F.3d 292, 299 (3d Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 694).

Petitioner's ineffective assistance of counsel claim rests on the assessment of a six level enhancement of the total offense level on Petitioner's sentence. (Memo. at 1.)  Petitioner's plea agreement states in Schedule A:

> The parties do not agree as to the applicability of U.S.S.G. § 2S1.1(b)(1) and both sides reserve the right to argue their respective positions at sentencing.  If the Court finds that defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote, an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical, the offense level will increase by 6 levels.

(Plea Agreement with Everardo Antonio Munoz, No. 08-156 [hereinafter "Plea Agreement"] at 6.)  Petitioner's claim fails for several reasons.  First, counsel had reserved the right to object to the six level enhancement prior to the plea.  Second, even if his counsel had objected, the result of the proceeding would not have been different given that Petitioner had already admitted under oath that he knew that the source of the laundered funds was from the sale of narcotics.[2]

---

[2] At Petitioner's plea proceeding, this Court stated to Petitioner: "Now, there are, essentially, two elements to that offense, that is, there was an agreement to conduct a financial transaction involving the proceeds of specified unlawful activity–in this case, narcotics distribution–with knowledge that the transaction was designed in whole or in part to conceal, or disguise, the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity.  Do you understand that?"  Petitioner replied "Yes."  (Tr. Plea 21:19-22:6.)

Petitioner has not established a claim of ineffective assistance of counsel because counsel's actions did not prejudice Petitioner, as required under the <u>Strickland</u> analysis.

## II.   **Petitioner's Unknowing and Involuntary Claim**

Petitioner asserts that his plea was unknowing and involuntary without explanation or elucidation.

While courts have not outlined a specific test or standard for "knowing and voluntary" pleas, the Supreme Court has referenced the factual nature of this analysis, stating "there is no adequate substitute for demonstrating in the record at the time the plea is entered the defendant's understanding of the nature of the charge against him." <u>McCarthy v. United States</u>, 394 U.S. 459, 470 (1969); <u>see</u> <u>also</u> <u>Brady v. United States</u>, 397 U.S. 742, 749 (1970) (reiterating the factual nature of the inquiry by stating that the voluntariness of a plea can only be determined by considering all of the record circumstances).

The Third Circuit has approached these questions by evaluating the specific terms of the plea agreement and the district court's colloquy, as mandated under Rule 11 of the Federal Rules of Criminal Procedure. <u>See, e.g.</u>, <u>United States v. Jackson</u>, 523 F.3d 234, 243 (3d Cir. 2008) (concluding that the defendant's plea was knowing and voluntary where District Court held a hearing to discuss the provisions of the plea agreement and verified that defendant read and understood the plea agreement); <u>United States v. Mabry</u>, 536 F.3d 231, 238-39 (3d Cir. 2008) (stating that a district court "at minimum, should have reviewed the terms of the plea agreement and change-of-plea colloquy and addressed their sufficiency" in considering the knowing and

Furthermore, counsel for Respondent asked Petitioner thereafter: "Whether or not you knew it at the time, do you know now that the source of the funds was from the sale of narcotics?" Petitioner responded "Yes." (Tr. Plea 23:15-23:17.)

voluntary waiver of rights under the defendant's plea agreement).

Under Rule 11 of the Federal Rules of Criminal Procedure, a district judge must address each defendant personally and advise and question them of factors such as any maximum penalty, any mandatory minimum penalty, waiver of trial rights, and waiver of the right to appeal under the plea agreement. FED. R. CRIM. P. 11(b)(1). The judge must also "determine that the plea is voluntary and did not result from force, threats, or promises." FED. R. CRIM. P. 11(b)(2). The Supreme Court of the United States has stated that "although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." McCarthy, 394 U.S. at 465 (citing Machibroda v. United States, 368 U.S. 487, 493 (1962)).

Courts have been sympathetic to claims of involuntary and unknowing pleas in particular situations, such as where the court did not personally address the defendant or where there is evidence that the defendant misunderstood the nature of their behavior in relation to the offense. See, e.g., McCarthy, 394 U.S. at 468 (holding that a court is not in compliance with Rule 11 of the Federal Rules of Criminal Procedure where the judge does not personally address defendant to inquire whether they understood the nature of the charge); United States v. Young, 424 F.2d 1276, 1280 (1970) (holding that guilty plea may not be "knowing" if the defendant understands the nature of the offense but does not understand whether their behavior falls within the offense). However, where Petitioner had the advice of counsel as well as an open-court explanation, this Court finds that the plea was entered "with sufficient awareness of the circumstances and likely consequences." Brady, 397 U.S. at 748 (stating that waivers of constitutional rights, such as

8

those in plea agreements must be voluntary, knowing, and intelligent acts where defendant has awareness of circumstances and the consequences of such waivers).

In this case, the plea colloquy between Petitioner and this Court demonstrates that Petitioner's plea was knowing and voluntary.  During the open-court colloquy, this Court engaged in extensive and comprehensive questioning of Petitioner,[3] addressing all the concerns raised by the Third Circuit and the Supreme Court.  Based upon Petitioner's responses, this Court concluded that Petitioner "entered [his] plea intelligently, knowingly, and voluntarily."[4]  (Tr. Plea 26:9-26:10.)

Petitioner received a copy of the plea agreement and signed a confirmation indicating that he understood the terms set forth in it.  This Court's colloquy during the plea proceeding reiterated Petitioner's understanding of the terms of the agreement and explicitly affirmed Petitioner's understanding that the agreed upon terms were not binding on the judge.  As a result, this Court finds that Petitioner did, in fact, enter into the plea agreement both knowingly and

---

[3]  This Court asked Petitioner: "Do you enter this plea of  your own free will?"  Petitioner responded "Yes."  (Tr. Plea 6:16-6:18.)  "Has anyone at all, your attorney, anyone from the government, any friend, threatened you in any way to induce you to enter this plea of guilty?"  Petitioner responded "No." (Tr. Plea 6:19-6:23.)  "[D]o you understand that you have an absolute constitutional right to persist in your plea of not guilty and go to trial on this indictment?"  Petitioner responded "Yes."  (Tr. Plea 13:10-13:14.)  "Do you further understand that, at trial, you would be presumed to be innocent, and the jury would be instructed by me of the existence of such presumption which would act in your favor until such time, if ever, as the government proved your guilt by competent evidence to the satisfaction of a jury beyond a reasonable doubt?"  Petitioner responded "Yes."  (Tr. Plea 14:13-14:20.)

[4]  This Court stated "I will accept the plea on behalf of . . . defendant.  It is obvious to me [defendant] is an intelligent person and that [he] understood the questions I have posed and answered responsively.  I have no doubt in my mind that [he has] entered [his] plea intelligently, knowingly, and voluntarily.  It is obvious to me there is an ample factual basis to sustain [his] plea and that each of the elements of the crime to which [he] is pleading has been satisfied."  (Tr. Plea 26:5-26:12.)

voluntarily, and therefore the guilty plea entered on March 20, 2008 passes constitutional muster under 28 U.S.C. § 2255.

### III.   Petitioner's Invalid Guilty Plea Claim

Petitioner contends that his guilty plea is invalid because this Court failed to inform him of his right to be represented by counsel at trial and "at every other stage of the proceeding," and his right to compel the attendance of witnesses, in accordance with FED. R. CRIM. P. 11(b)(1)(D) and (E), respectively. (Mem. at 7.)  Petitioner's plea is valid, however, because this Court did inform him he was waiving these constitutional rights.

Under Rule 11 of the Federal Rules of Criminal Procedure, a district judge must address each defendant personally to inform them and determine that they understand certain legal issues, such as any maximum penalty, any mandatory minimum penalty, waiver of trial rights, and waiver of the right to appeal under the agreement.  FED. R. CRIM. P. 11(b)(1).  The judge must also "determine that the plea is voluntary and did not result from force, threats, or promises." FED. R. CRIM. P. 11(b)(2).  The Supreme Court of the United States has stated that "although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary."  McCarthy, 394 U.S. at 465 (citing Machibroda v. United States, 368 U.S. 487, 493 (1962)).

The Supreme Court has not set forth a "mandatory litany" that must be followed in every plea colloquy, "and the failure to advise a defendant of each right does not automatically invalidate the plea."  United States v. Stewart, 977 F.2d 81, 84 (3d Cir. 1992).  Rather, "[t]he ritual of the colloquy is but a means toward determining whether the plea was voluntary and

10

knowing." <u>Id.</u>

Although this Court did not recite the exact language of Rule 11(b)(1), the questions and statements directed personally at Petitioner during the plea colloquy are sufficient to convey the underlying meaning and intent of the Rule.  For example, this Court did not specifically state in the words of Rule 11(b)(1)(D) that Petitioner had the right to be represented "at every other stage of the proceeding."  Instead, this Court inquired whether the defendant understood that his attorney would "be here at trial to represent [him]" and explained that his counsel could "participate in the selection of the jury, make an opening statement and closing argument to the jury, and could cross-examine the government's witnesses."  (Tr. Plea 15:19-15:23.)  Similarly, this Court did not inform petitioner in the words of Rule 11(b)(1)(E) that he had the right to "compel the attendance of witnesses."  Instead, this Court explained that Petitioner "could call witnesses and produce exhibits and documents in support [of] any defense."  (Tr. Plea 15:8-15:9.)  In sum, this Court complied with the requirements of Rule 11 when it informed Petitioner he was waiving these constitutional rights.  Petitioner acknowledged in each instance in response to these questions that he understood his rights in each circumstance.  Therefore, Petitioner's claim fails.

## IV.  <u>Petitioner's Booker Claim</u>

Petitioner argues that "[b]ecause the district court imposed punishment based upon facts that were not proved beyond a reasonable doubt or admitted by Mr. Munoz, it violated Mr. Munoz's constitutional rights, and his sentence must be vacated."  (Memo. at 10.)  Petitioner further contends that this Court violated his rights to notice and trial by jury "by increasing his sentence based upon factors not admitted or proved to a jury."  (Memo. at 10-11.)  Petitioner fails

to specify any factors.  Based upon Petitioner's ineffective assistance of counsel argument, this Court presumes Petitioner is referring to whether or not he knew the  funds were proceeds from some illegal source, rather than proceeds of drugs.  (Memo. at 5.)  Contrary to Petitioner's arguments, there is no evidence of constitutional error in Petitioner's sentence.

In <u>Booker v. United States</u>, 543 U.S. 220, 245 (2005), the Supreme Court held that the Sentencing Reform Act of 1984 requires a sentencing court to consider guideline ranges, but "permits the court to tailor the sentence in light of other statutory concerns as well."  <u>Booker</u> afforded broad discretion to sentencing courts by making the sentencing guidelines advisory.  <u>Id.</u> It also instructed district courts to begin the sentencing analysis with a guideline range calculation and then consider the § 3553(a) factors.  <u>Id.</u> at 224-25.  The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics   of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>>
>> (B) to afford adequate deterrence to criminal conduct
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement [] issued by the Sentencing Commission . . . subject to any amendments made to such policy statement by act of Congress . . . and [] that, except as provided in section 3472(g), is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

A sentencing court is not required, however, "to discuss and make findings of each of the 3553(a) factors if the record makes clear the court took the factors into account in sentencing . . . ." United States v. Cooper, 437 F.3d 324, 326 (3d Cir. 2006), abrogated on other grounds by United States v. Wells, 279 F. App'x 100 (3d Cir. 2008).

The record clearly indicates that this Court followed the procedures under Booker and acted within its discretion in sentencing Petitioner to a 70-month prison term.[5]  (See Sent. Tr.

---

[5] This Court calculated the appropriate guideline range and then considered the § 3553(a) factors:

> With the level for acceptance of responsibility, [Petitioner's] total offense level would be 27.  Criminal history category of one. Custody provisions of 70 to 87 months.  He would not be eligible for probation.  (Sent. Tr. 6:21-6:24.)  In arriving at the appropriate sentence in a federal criminal case, the Court must take into account the factors that are set forth in 18 United States Code, Section 3553(a).  Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, that sentence should reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to the criminal conduct; and to protect the public from further crimes of the defendant. The Court should also take into account the kinds of sentences available, the kinds of sentence ranges available, and any pertinent policy statements.  The Court should also focus on the need to avoid sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. (Sent. Tr. 8:11-9:2.)

13

8:11-9:2.)  It is sufficient that this Court took the <u>Booker</u> procedures into consideration when

determining Petitioner's sentence.  <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38 (2007); <u>Kimbrough v.</u>

<u>United States</u>, 552 U.S. 85 (2007).

 This Court's consideration of the sentencing discretion afforded under <u>Booker</u> during

Petitioner's sentencing hearing is further evidenced in this record.[6]  Moreover, because

Petitioner's sentence falls within the proscribed 70-87 month incarceration period, dictated by the

sentencing guidelines, it enjoys a presumption of reasonableness.  <u>United States. v. Rita</u>, 551

U.S. 338, 338 (2007) (holding that "a court of appeals may apply a presumption of

reasonableness to a district court sentence within the Guidelines.").  Therefore, there is no

evidence of a constitutional error in Petitioner's sentence.

## V. <u>Petitioner's Santos Claim</u>

 On March 6, 2009, Petitioner filed a Motion for Leave to Supplement Petitioner's 28

U.S.C. § 2255 Motion, arguing that his "sentence was enhanced in violation of due process" in

light of the Supreme Court's decision in <u>United States v. Santos</u>, 128 S. Ct. 2020 (2008).

Specifically, Petitioner argues that this Court should construe the term "proceeds" in 18 U.S.C. §

---

As to the nature and circumstances of the offense, this Court observed that "[i]n this matter, there
. . . was an enormous amount of money involved, money that the defendant knew was involved
in illicit activity, and he's admitted to such.  When one looks at those circumstances, it certainly
does speak to a sentence falling within the guideline range.  There has been some allusion by
counsel to the Court to adjusting the sentence in this matter.  I do not see that there's any room
for any departures, adjustments, or the like."  (Sent. Tr. 9:8-9:15.)

 [6] "This is a serious offense facilitating a far more serious offense, and this is an enormous
amount of money involved.  Whether Mr. Munoz was induced by others or came along willingly,
he clearly has allocuted to, number one, knowing what he was doing; number two, doing so
voluntarily; and number three, engaging in this activity without any coercion or beguilement.
Based on this, it is this Court's view that any leniency below the application of the guidelines is
inappropriate." (Sent. Tr. 9:16-9:24.)

1956 to mean "profits," not "receipts," as the Supreme Court did in Santos.

The four-justice plurality in Santos agreed that the meaning of the term "proceeds" in 18 U.S.C. § 1956 was defined as "profits," not "receipts," of the transactions surrounding an illegal gambling business.  The Supreme Court declined to extend this definition to all forms of money laundering.  Justice Alito pointed out in his dissent that "five Justices agree with the position" that "the term 'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'"  Santos, 128 S. Ct. at 2035  & n.1 (quoting Justice Stevens' concurrence).

The Third Circuit agreed with Justice Alito's comment, holding that the term "proceeds" includes gross revenues in the case of drug sales.  See United States v. Fleming, 287 F. App'x 150, 155 (3d Cir. 2008) ("Therefore, even if the government did not show that the money involved in Fleming's money laundering conviction was from profits from the drug sales, his conviction on this count must stand because . . . the term 'proceeds' includes gross revenues for drug sales.").

In Petitioner's case, the money involved arose from the sale of narcotics, as acknowledged during Petitioner's plea.  Fleming is the death knell to Petitioner's claim. Petitioner's claim is distinguishable from Santos because, for the purposes of his case, the term "proceeds" includes gross revenues and not simply profits.

15

## <u>CONCLUSION</u>

For the foregoing reasons, this Court denies Petitioner's motion seeking to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.  Petitioner has not made a substantial showing of the denial of a constitutional right, by demonstrating that his counsel's assistance was ineffective, or that his plea was invalid or unknowing and involuntary.  Petitioner has also failed to establish his <u>Booker</u> and <u>Santos</u> claims.  Pursuant to 28 U.S.C. § 2253(c)(2), because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.


DATED: March 24, 2010

 S/Joseph A. Greenaway, Jr.          
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)